70869. GABLER v. THE STATE.
(338 SE2d 469)

POPE, Judge.

Defendant Ronald E. Gabler was tried by a jury and convicted of the offense of aggravated assault. He appeals from the trial court's denial of his motion for new trial.

1. Although the evidence was in some dispute, the jury was authorized to find the following facts: Gabler and his wife, Mary, had separated in mid-November 1983. In the early afternoon of January 3, 1984, Gabler saw his estranged wife and followed her car to the neighborhood of the victim, Thomas R. Duff. Gabler drove past Duff's house and parked his car, returning with a camera. Mary and Duff were friends, and she was at his home as a guest for lunch. Since they were expecting another friend to join them, Mary had parked her car in the garage to leave room for another car in the driveway before entering the house. Gabler approached Duff's house through a neighbor's yard, looked in the garage and took a picture of Mary's car. Duff had walked from the house onto a sundeck to prepare lunch when he saw Gabler in the neighbor's backyard. Duff had never before seen Gabler and thought it suspicious that he was in the neighbor's yard when the neighbor was at work. Seeing Gabler leave the premises, Duff left in his car to find out what Gabler had been doing next door. A short distance away, as Duff pulled his car to the curb but left the

motor running, Gabler approached him. Duff exited the car asking Gabler what he had been doing around his neighbor's yard. Gabler replied, "Nothing," then began striking Duff's face with his fists and biting Duff's thumb. During the course of the altercation, Gabler knocked Duff to the ground, continued the blows to Duff's face and grabbed and squeezed Duff's throat. Gabler stood up and began to stomp and kick Duff in the forehead and temple area. He then dragged Duff back to the car and drove him back to his house where he dragged him up the stairs and inside the house, dumping him on the floor and taking his picture. Duff testified that he did not know his assailant's identity until the next day.

Officer Romeo of the Peachtree City Police Department answered a call and, upon investigation, found Duff with blood all over his face and head and appearing to be dead. Based upon his examination of Duff, Lieutenant Hughey of the Peachtree City Fire and Rescue Department, an advanced emergency medical technician, called in the Life Flight medical helicopter which transported Duff from Peachtree City to Georgia Baptist Hospital in Atlanta. Once there, Dr. Richardson, a neurosurgeon, examined Duff, ordered various tests, and placed him in the neuro-intensive care unit. Suturing by a plastic surgeon was required to close Duff's facial lacerations. Duff was monitored in the intensive care unit for a day, then moved to a hospital room until his discharge from Georgia Baptist Hospital on January 7, 1983.

Although Gabler does not raise on appeal the sufficiency of the evidence to support his conviction, we have reviewed the evidence in the light most favorable to the jury's determination. We conclude that any rational trier of fact could have found Gabler guilty of committing the offense of aggravated assault beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Harper v. State*, 152 Ga. App. 689 (2) (263 SE2d 547) (1979). See also *Thomas v. State*, 237 Ga. 690 (I) (229 SE2d 458) (1976).

2. Trial counsel was replaced by a different attorney on appeal who amended the motion for new trial to include allegations that Gabler was provided ineffective assistance of counsel at trial. In his sole enumeration of error, Gabler asserts that the performance of his retained trial counsel deprived him of state and federal constitutional rights to effective assistance of counsel and a fair trial. We note at the outset that this enumeration contains the first and only mention of any violation of Gabler's rights under the Georgia Constitution. Appellate counsel has provided no citation to the particular portion of the state constitution claimed to be infringed; nor is a separate argument made based upon the Georgia Constitution. Thus, we make no separate examination of this claim. See *Davenport v. State*, 172 Ga. App. 848 (2) (325 SE2d 173) (1984).

At the hearing on the amended motion for new trial, the trial

court heard arguments and received evidence designed to support Gabler's claim that trial counsel provided him ineffective assistance in essentially two particulars: failing to investigate Duff's injuries by interviewing his physicians and gathering his medical reports, and failing to object to certain testimony at trial which Gabler now urges prejudicially impugned his character. We add that trial counsel appeared as a witness called by Gabler and gave lengthy testimony at the hearing on the amended motion for new trial. In denying Gabler's amended motion for new trial, the trial court found inter alia, that Gabler's trial counsel, a member of the Bar for over 30 years, had tried many criminal jury trials. Trial counsel represented Gabler at his trial in January 1985 and at his divorce trial some two months later and approximately one week before the hearing on the amended motion for new trial. The court found that trial counsel made tactical decisions concerning the character evidence later complained of and that Gabler insisted (rejecting trial counsel's advice) that a certain witness be called. Based upon the evidence at the hearing and the trial court's observations at trial, the trial court concluded that Gabler was afforded competent representation by an attorney of his own choice. We agree with the trial court's order and affirm the denial of Gabler's amended motion for new trial.

We are guided in our analysis of the issue raised by Gabler's enumeration of error by two decisions of the United States Supreme Court as well as by recent Georgia appellate opinions applying them. In *United States v. Cronic*, 466 U. S. ___ (104 SC 2039, 80 LE2d 657) (1984), "the court reiterated the maxim that the right to counsel is the right to effective assistance of counsel. Furthermore, the right to the effective assistance of counsel is recognized not for its own sake, but because of the effect it has on the ability of the accused to receive a fair trial. The court noted that because of the presumption that a lawyer is competent, the burden rests on the accused to demonstrate a constitutional violation." (Punctuation omitted.) *Davenport v. State*, supra at 851. Although the court in *United States v. Cronic*, supra, listed certain contexts in which prejudice is presumed, none are presented by the case before us now. Neither is a conflict of interest raised or shown herein. We therefore "follow the Supreme Court's two-prong test set forth in *Strickland v. Washington*, [466] U. S. ___ (104 SC 2052, 80 LE2d 674) (1984), in determining whether there has been actual ineffective assistance of counsel, thereby requiring the reversal of defendant's conviction. The defendant must show both that counsel's performance was deficient and that this deficiency prejudiced the defense. *Strickland v. Washington*, supra, [466] U. S. at ___ (104 SC at 2064); *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985). In *Strickland* the Supreme Court approved Georgia's 'reasonably effective assistance' standard enunciated in *Pitts v. Glass*,

231 Ga. 638 (203 SE2d 515) (1974). *Strickland v. Washington,* supra, [466] U. S. at ___ (104 SC at 2064); *Smith v. Francis,* supra, 253 Ga. at 783. Thus, counsel's performance will not be found to be deficient if it falls within the range of 'reasonably effective assistance.' To perform within this range, counsel must make all significant decisions in the exercise of reasonable professional judgment. The reasonableness of counsel's performance is then considered in light of the totality of the circumstances, viewed from counsel's perspective at the time of trial, thereby eliminating the possible distortions of hindsight analysis. *Smith v. Francis,* supra, 253 Ga. at 783. The defendant must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct. Regarding the second prong of the test, the defendant must show that the deficient performance actually prejudiced the defense. In other words he must show there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's unprofessional errors. *Strickland v. Washington,* supra, [466] U. S. at ___ (104 SC at 2068); *Smith v. Francis,* supra, 253 Ga. at 783." (Indention omitted.) *Brogdon v. State,* 255 Ga. 64, 67-8 (335 SE2d 383) (1985). See also *Kornegay v. State,* 174 Ga. App. 279 (329 SE2d 601) (1985).

With regard to the first prong, Gabler has failed to show that trial counsel failed to provide "reasonably effective assistance" or that he made errors so serious that he was not functioning as the "counsel" guaranteed Gabler by the Sixth Amendment. *Strickland v. Washington,* supra. Trial counsel's decision to forego investigation of Duff's medical records and the interview of his physicians falls into the category of trial strategy. Prior to trial he had interviewed Gabler as to Duff's injuries, read the police reports, and read the transcript of a prior hearing in the criminal action as well as one in the Gablers' then-pending divorce action. No medical reports of Duff's nor evidence from Duff's physicians was introduced by the State. Trial counsel's decision regarding Duff's injuries was made in an effort to minimize the effect of other testimony on this subject and was based upon his judgment that Gabler could be harmed by repeated mention of Duff's injuries and the treatment he received for them. Instead, trial counsel advanced the defense of mutual combat.

Even though we find no deficiency in trial counsel's performance in this regard, we will examine this allegation under the second prong; i.e., has Gabler shown a reasonable probability that the outcome of the proceedings would have been different had trial counsel introduced the medical evidence now urged by appellate counsel? After reviewing that evidence, we find no such reasonable probability that Gabler would have been acquitted based upon its introduction. First of all, the medical records included on appeal contain repeated references to such potentially damaging terms as possible cerebral concus-

sion, head injury, continuous EKG monitor, extensive contusions, and plastic surgery. Moreover, the admission of physician testimony to show that Duff suffered no life-threatening injuries would not have negated the State's case against Gabler nor called for a directed verdict of acquittal. The indictment upon which he was tried charged Gabler with unlawfully making "an assault upon the person of Thomas R. Duff, with his fists, the same being a deadly weapon." OCGA § 16-5-21 (a) (2) provides: "A person commits the offense of aggravated assault when he assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury." There is obviously no necessity for showing that the injuries inflicted were life-threatening or for a showing that the infliction of such injuries *actually did* result in serious bodily injury.

The State was required to and did show that Gabler's fists were deadly weapons or were used against Duff in such a manner as were likely to result in serious bodily injury. Fists, per se, are not deadly weapons but may be found to be so by a jury depending upon the manner and means of their use. See *Guevara v. State*, 151 Ga. App. 444 (2) (260 SE2d 491) (1979); *Quarles v. State*, 130 Ga. App. 756 (2) (204 SE2d 467) (1974). See also *Thomas v. State*, 172 Ga. App. 70, 73 (1) (321 SE2d 808) (1984); *Banks v. State*, 169 Ga. App. 571 (1) (314 SE2d 235) (1984). The jury was provided and the record contains a photograph taken of Duff while he was hospitalized. Duff testified that during the beating he told Gabler repeatedly that he was killing him and that he could not breathe. It is undisputed that Gabler inflicted the injuries upon Duff and that hospitalization was required. Dr. Richardson, the neurosurgeon, made the decision to monitor Duff's condition in the neuro-intensive care unit. Further, Duff was kept as a patient in the hospital for three additional days after being moved from intensive care. Even if the medical testimony and Duff's records now urged by appellate counsel had been introduced at trial, the jury *would still* have been provided with ample evidence to authorize Gabler's conviction of aggravated assault.

Appellate counsel next argues that trial counsel was ineffective because he did not object to certain testimony which he claims attacked Gabler's character. Our review of the transcript reveals one instance in the direct testimony of Mary Gabler in which her somewhat unresponsive answer placed Gabler's character in issue by stating that Gabler had previously beaten her. However, trial counsel's failure to object to this line of questioning does not warrant a finding that he was ineffective counsel for Gabler. At trial Gabler relied upon several witnesses to establish his good character. In fact, Gabler testified at length repeatedly placing his character in issue and, over trial counsel's advice and the advice of the witness himself, Gabler insisted

upon calling the Gablers' minister as a character witness. The minister was then cross-examined to show that he had counseled with Mary Gabler because Gabler had abused her and that he had referred her to an organization for battered women. As in *Davenport v. State*, supra at 852, "[a] thorough review of the record in this case reveals that any indicia of prejudice to the defendant is totally lacking." We thus find no merit in Gabler's claim of ineffectiveness of trial counsel as raised on appeal.

*Judgment affirmed. Deen, P. J., and Beasley, J., concur.*

DECIDED NOVEMBER 12, 1985 —
REHEARING DENIED NOVEMBER 20, 1985 — 

*Herbert Shafer*, for appellant.

*Johnnie L. Caldwell, Jr.*, District Attorney, *Paschal A. English, J. David Fowler, Christopher C. Edwards*, Assistant District Attorneys, for appellee.