## A09A0473. RIDDLE v. THE STATE.
(687 SE2d 165)

DOYLE, Judge.

Following a jury trial, Richard Riddle appeals from his conviction of influencing the winning of a lottery prize[1] (two counts), arguing that (1) the criminal statute proscribing the offense did not apply to his conduct, and (2) the evidence was insufficient to show he committed the offense as alleged. For the reasons that follow, we affirm.

Construed in favor of the verdict,[2] the evidence shows that at approximately 5:10 one morning, police responded to a burglary call at a Shell gas station. They observed that the glass door had been smashed, the counter was in disarray, and several rolls of lottery tickets had been stolen. Police reported the stolen tickets to the Lottery Commission, which deactivated the tickets, and at approximately 8:30 a.m., police received a call about an attempt to cash in a stolen lottery ticket at a nearby convenience store. Police responded to that scene and arrested Riddle, whom the clerk identified as presenting two purportedly winning tickets worth a total of $110 plus a free ticket. The tickets matched the serial numbers of those stolen from the Shell station, and a Shell employee confirmed that the tickets presented by Riddle had never been sold.

Riddle was charged with committing the Shell station burglary and influencing the winning of a lottery prize. In a jury trial, Riddle was found not guilty of the burglary and guilty of two counts of influencing the winning of a lottery prize. This appeal followed.

1. Riddle contends that the statute under which he was charged did not apply to his conduct. We disagree.

Riddle was found guilty of violating OCGA § 50-27-27 (b), which

---

[1] OCGA § 50-27-27 (b).
[2] See *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

is the penalty portion of the Georgia Lottery for Education Act, and which provides: "Any person who influences or attempts to influence the winning of a prize through the use of coercion, fraud, deception, or tampering with lottery equipment or materials shall be punished by a fine not to exceed $50,000.00 or by imprisonment for not longer than five years or both."

Riddle argues that this Code section does not proscribe the act of presenting a stolen lottery ticket for redemption of a prize because he construes the provision to prohibit only political influence on the operation of the state lottery system. However, this ignores the plain language of the statute.

> It is elementary that in all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly. In so doing, the ordinary signification shall be applied to all words. Where the language of a statute is plain and susceptible to only one natural and reasonable construction, courts must construe the statute accordingly.[3]

Here, Riddle was accused of violating the statutory prohibition against "influenc[ing] . . . the winning of a prize through the use of . . . fraud [and] deception."[4] The conduct giving rise to the finding of guilt was Riddle's presentation of two stolen lottery tickets to be redeemed for prizes. It is clear that this was for the purpose of influencing the winning of a prize because Riddle sought to win the prize for himself. Riddle's conduct was "through the use of . . . fraud [and] deception," because he presented the stolen tickets as though they were legitimate, paid-for winning tickets. The chance to win a lottery prize is predicated on purchasing a ticket, which generates the revenue sought by the State in furtherance of the goals of the Lottery Act. As noted by the State, the General Assembly codified legislative findings and declarations in the Act, providing

> [t]hat net proceeds of lottery games conducted pursuant to this chapter shall be used to support improvements and enhancements for educational purposes . . . [t]hat lottery games are an *entrepreneurial enterprise* . . . [and t]hat

---

[3] (Punctuation and footnotes omitted.) *Chase v. State*, 285 Ga. 693, 695 (2) (681 SE2d 116) (2009).

[4] OCGA § 50-27-27 (b).

lottery games shall be operated and managed in a manner which . . . *maximizes revenues.* . . .[5]

Based on this declaration, it is clear that the legislature intended that the lottery be a source of revenue to be used by the State of Georgia for educational purposes. The Act explicitly prohibits *payment* of prizes "arising from claimed tickets that are stolen,"[6] and knowingly presenting a stolen ticket for redemption frustrates both this prohibition and the entrepreneurial purpose of the Act. Therefore, consistent with the Act's language and purpose, we hold that the fraudulent or deceptive presentation of a stolen lottery ticket for redemption of a prize is prohibited by OCGA § 50-27-27 (b).[7]

2. Riddle also contends that even if the Act proscribes the accused behavior, the evidence did not suffice to support his conviction based on fraud and deceit because he allegedly did not know that the tickets were stolen. We disagree.

> The standard of review for sufficiency of the evidence [in a criminal case] is set out in *Jackson v. Virginia*.[8] The relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. In addition, appellant no longer enjoys a presumption of innocence. An appellate court determines only the legal sufficiency of the evidence adduced below and does not weigh the evidence or assess the credibility of the witnesses.[9]

Viewed in this light, the record belies Riddle's contention that there was insufficient evidence of his knowledge that the tickets were stolen. At trial, there was testimony relating evasive and inconsistent statements Riddle had given to police regarding his whereabouts on the morning he presented the stolen tickets. This supports an inference that Riddle knew the tickets were not properly acquired. Furthermore, Riddle's defense witness testified that he gave Riddle the two winning tickets and that he had told Riddle that he found them. But that witness also testified that the winning tickets he gave Riddle were of the same type, which conflicted with

---

[5] (Emphasis supplied.) OCGA § 50-27-2.

[6] OCGA § 50-27-24 (c) (2).

[7] We need not determine the scope of the coercion or tampering elements of OCGA § 50-27-27 (b) because they were not indicted here.

[8] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[9] (Punctuation omitted.) *Taylor v. State*, 266 Ga. App. 818 (598 SE2d 122) (2004).

evidence (i.e., the tickets themselves) that the tickets presented by Riddle were of two different types. Therefore, in light of the evidence undermining Riddle's ignorance defense, and in light of the uncontroverted evidence that the tickets presented by Riddle were in fact stolen and never purchased, the jury was authorized to find that Riddle knew the tickets were stolen when he presented them.[10]

Riddle also contends that because he was unsuccessful in redeeming the winning tickets, he did not actually influence the winning of a ticket. We are unpersuaded by this argument because Riddle was accused of influencing the winning by presenting the stolen tickets. Riddle's presentation of the tickets was the completed criminal act, not the receipt of a lottery prize. Therefore, Riddle completed the crime as alleged in the indictment and prohibited by statute.

*Judgment affirmed. Blackburn, P. J., and Adams, J., concur.*

## DECIDED NOVEMBER 19, 2009.

*Dante L. Hudson*, for appellant.

*Stephen D. Kelley, District Attorney, David E. Perry, Assistant District Attorney*, for appellee.

---

[10] See *Vadde v. State*, 296 Ga. App. 405, 407-408 (1) (674 SE2d 323) (2009) (finding sufficient evidence of deposit account fraud based on combination of circumstantial evidence including defendant's implausible testimony and conflict with fraudulent checks themselves); *Leachman v. State*, 226 Ga. App. 98, 100 (485 SE2d 587) (1997) ("conflict in the evidence presented a credibility question which the jury determined adversely to defendant, authorizing a finding that defendant knew" of criminal nature of conduct). See also *Jackson*, 443 U. S. at 319 (standard for sufficiency of evidence).