### A10A1793. DOE v. THE STATE.
(702 SE2d 669)

JOHNSON, Judge.

Following a jury trial, Curtis Lee Doe was convicted of attempting to influence the winning of a prize by tampering with lottery equipment in violation of the Georgia Lottery for Education Act.[1] Doe appeals from the conviction entered on the verdict and the denial of his motion for a new trial, claiming (i) numerous errors related to what he claims was a defective indictment, (ii) that the criminal statute under which he was charged does not apply to his conduct, (iii) that there was a fatal variance between the indictment and the evidence adduced at trial, and (iv) that the trial court erred in charging the jury. We find no error and affirm.

Construed most strongly in support of the verdict,[2] the evidence shows that at approximately 1:30 a.m. on February 23, 2004, Doe

---

[11] (Citation and punctuation omitted.) Id.

[12] *Professional Standards Comm. v. Valentine*, 269 Ga. App. 309, 313 (603 SE2d 792) (2004).

[1] See OCGA § 50-27-27 (b).

[2] *Riddle v. State*, 301 Ga. App. 138 (687 SE2d 165) (2009).

entered a convenience store in Tattnall County. Doe lived near the store, and he was a regular customer who was known by the store employees.

While the employee working the night shift was cleaning, she heard a squeaking noise coming from the counter where the lottery tickets were kept. The employee went to the counter and asked Doe, who was the only other person in the store, if he had taken some lottery tickets. Doe denied having taken any tickets and left the store.

When the employee reported the incident to her manager, the manager reviewed the surveillance video for that morning as well as surveillance video for two previous days. On each of the three recordings, Doe could be seen reaching over the counter and taking lottery tickets off the plastic wheels on which they were rolled. The manager of the convenience store conducted an inventory of the remaining lottery tickets and presented evidence as to each type of lottery ticket that was taken on the three days in question.

1. Doe makes several claims regarding what he alleges was a defective indictment. "The true test of the sufficiency of an indictment is not whether it could be made more certain and definite, but whether it contains the elements of the offense charged, apprises the accused of what he must be prepared to defend against, and protects against double jeopardy."[3] This Court applies a de novo standard of review to a trial court's determination that the allegations in an indictment were legally sufficient.[4]

Here, the indictment charged Doe

> with the offense of FALSELY UTTERING A STATE LOT-TERY TICKET ([OCGA §] 50-27-27), a Felony, for that the said accused in the County of Tattnall and the State of Georgia on or about the dates between the 19th day of February, 2004 and the 23rd day of February, 2004 . . . did, with intent to influence the winning of Georgia Lottery prizes by tampering with lottery materials, to wit: said accused did take approximately 20 Lucky Seven tickets, 31 Mini Mega Buck tickets, 5 Strike it Rich tickets and 39 Match Money Tickets from Time Saver #86 in Tattnall County, Georgia, contrary to the laws of said State, the good order, peace and dignity thereof.

Doe complains that the indictment was defective because it referenced "falsely uttering" a state lottery ticket, which is pro-

---

[3] *Hester v. State*, 283 Ga. 367, 368 (2) (659 SE2d 600) (2008).
[4] *State v. Pittman*, 302 Ga. App. 531 (690 SE2d 661) (2010).

scribed under OCGA § 50-27-27 (a), whereas the particular averments presented in the indictment alleged an attempt to influence the winning of lottery prizes through tampering with lottery materials, which is proscribed under OCGA § 50-27-27 (b). However, the Supreme Court of Georgia has made it clear that "[i]t is immaterial what the offense is called [in the indictment as long as] the averments of the presentment are such as to describe an offense against the laws of the state. . . ."[5]

Here, the indictment informed Doe that he was accused of attempting "to influence the winning of Georgia Lottery prizes by tampering with lottery materials[,]" and Doe was apprised of what he should be prepared to defend against at trial. Indeed, during the proceeding in which the trial court considered Doe's demurrer, Doe acknowledged he was being charged with "tampering of [sic] the lottery material" based upon having taken the lottery tickets as alleged in the indictment, and the prosecutor acknowledged the error in referencing "uttering" a ticket in the caption of the indictment.

While Doe claims that the reference to "falsely uttering" a lottery ticket was "extraneous and prejudicial[,]" we have already held that "mere surplusage does not vitiate an otherwise sufficient indictment."[6] Doe was not harmed by the erroneous reference to "falsely uttering" a lottery ticket, and because "[a]ny error in failing to give him a 'perfect' indictment is subject after trial to a harmless error test," the enumerations alleging that the indictment was defective are without merit.[7]

2. Doe also claims that the statute under which he was charged does not apply to his conduct. As set forth previously, the indictment charged Doe with attempting to influence the winning of lottery prizes by tampering with lottery materials in violation of OCGA § 50-27-27 under the Georgia Lottery for Education Act. The indictment uses the same language as subsection (b) of that statute, which makes it a crime for any person to "influence[ ] or attempt[ ] to influence the winning of a prize through the use of coercion, fraud, deception, or tampering with lottery equipment or materials. . . ."

---

[5] (Citation and punctuation omitted.) *State v. Eubanks*, 239 Ga. 483, 484 (238 SE2d 38) (1977) (indictment named crime as "theft by deception" but alleged acts that constituted crime of theft by conversion); see also *Hill v. State*, 257 Ga. App. 82, 84 (1) (570 SE2d 395) (2002) ("It is the description of the crime, rather than the description and number of the section under which it appears in the Code which furnishes the criterion for determining whether the indictment is good.") (citation and punctuation omitted).

[6] *State v. Barnett*, 268 Ga. App. 900, 901 (1) (602 SE2d 899) (2004) (trial court erred in granting special demurrer even though indictment erroneously referenced "family violence" in count alleging aggravated assault pursuant to OCGA § 16-5-21).

[7] *Eubanks*, supra at 489.

While Doe claims that OCGA § 50-27-27 (b) does not apply to his conduct, this Court has already upheld a conviction under OCGA § 50-27-27 (b) for a defendant alleged to have presented stolen lottery tickets to be redeemed for prizes.[8] In *Riddle*, the defendant was acquitted of burglary for having broken into a gas station and taken the lottery tickets, but he was found guilty of violating OCGA § 50-27-27 (b) based on a finding that presenting the stolen tickets for redemption "violat[ed] the statutory prohibition against 'influenc(ing) . . . the winning of a prize through the use of . . . fraud (and) deception.' "[9]

As in *Riddle*, Doe's actions were for the purpose of influencing the winning of a prize offered by the Georgia Lottery Corporation because he took the tickets in order to win lottery prizes for himself even though such conduct deprived other customers of the opportunity to lawfully purchase those tickets.[10] In addition, his action of leaning over the counter that stored the tickets, rolling the tickets off the plastic wheels on which they were housed, ripping the tickets off the rolls, and taking them for his own use constituted "tampering with lottery . . . materials."[11] Given that the state presented evidence that Doe violated both the "influencing" and "tampering" elements of OCGA § 50-27-27 (b), he was properly convicted of violating that statute.[12]

3. Doe also claims that there was a fatal variance between the allegations of the indictment and the evidence presented at trial. He bases this claim on the state's introduction of evidence that, in addition to taking the lottery tickets, he scratched off the concealing material on some of the tickets to see if he had won any prizes.

A fatal variance is created when there is such a variance between the allegations of an indictment and the evidence presented at trial "as to affect the substantial rights of the accused."[13] Here, however, there was no variance because the state introduced evidence as to every essential element of the indictment. In addition to the testimony of the store employees, video recordings showed Doe taking the lottery tickets just as alleged in the indictment. The video evidence of Doe scratching the concealing material off the tickets served as additional evidence that he sought to influence the winning of lottery

---

[8] *Riddle*, supra at 139 (1).

[9] Id.

[10] Id.

[11] See OCGA § 16-10-94 (a) ("tampering" with evidence occurs when one knowingly takes and conceals evidence for an improper purpose and does not require destruction or alteration of the evidence); see also *Taylor v. State*, 260 Ga. App. 890, 891 (1) (b) (581 SE2d 386) (2003).

[12] See *Riddle*, supra.

[13] (Citation omitted.) *Delacruz v. State*, 280 Ga. 392, 396 (3) (627 SE2d 579) (2006).

prizes and also bolstered the evidence that the items he was seen taking on the video were, in fact, lottery tickets. Given that there was no variance between the allegations in the indictment and the evidence produced at trial, Doe's claim that there was a fatal variance has no merit.[14]

4. Doe also alleges the trial court erred in failing to instruct the jury that the state was required to prove the offense was committed in the same manner as set forth in the indictment. Even if Doe had properly preserved this error for consideration on appeal,[15] his claim is not supported by the record. Instead, the transcript of the trial proceedings shows that the trial court instructed the jury: (i) "No person shall be convicted of any crime unless and until each element of the crime as charged is proven beyond a reasonable doubt"; and (ii) "The burden of proof rests upon the State to prove every material allegation of the indictment and every essential element of the crime charged beyond a reasonable doubt."

In addition, the trial court did not err in charging the jury as a result of having read the indictment, including the erroneous reference to "falsely uttering" a lottery ticket. As stated in Division 1, the body of the indictment clearly defined and described the offense Doe was charged with having committed. Because no confusion could have resulted from reading the indictment as written, Doe has failed to establish that the trial court erred in charging the jury.[16]

*Judgment affirmed. Miller, C. J., and Phipps, P. J., concur.*

DECIDED OCTOBER 5, 2010 — 

*Maurice V. Joseph, Craig T. Pearson*, for appellant.
*Tom Durden, District Attorney, Sandra Dutton, Assistant District Attorney*, for appellee.

[14] See *Adcock v. State*, 269 Ga. 9, 11 (1) (603 SE2d 340) (2004).

[15] See *Allen v. State*, 275 Ga. App. 826, 830 (4) (622 SE2d 54) (2005) (failure to object to a jury charge in a criminal case constitutes a waiver except where, under OCGA § 5-5-24 (c), there has been a substantial error in the charge that was harmful as a matter of law).

[16] *Zinnamon v. State*, 261 Ga. App. 170, 175 (3) (a) (582 SE2d 146) (2003).